**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION**

| | | |
|---|---|---|
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 4:12-cv-00165-CWR-LRA |
| PETCO PETROLEUM CORP. and JOHN R. RICHARDSON, | ) ) ) ) | |
| Defendants. | | |
| PETCO PETROLEUM CORP. and JOHN R. RICHARDSON, | ) ) ) | |
| Counter-Plaintiffs, | ) ) | |
| v. | ) ) | |
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, | ) ) ) ) | |
| Counter-Defendant. | ) | |
| PETCO PETROLEUM CORP., | ) ) | |
| Third-Party Plaintiff | ) ) | |
| v. | ) ) | |
| CHUBB CUSTOM INSURANCE CO., | ) ) | |
| Third-Party Defendant. | ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

Before the Court are National Union Fire Insurance Company of Pittsburgh, PA's

("National Union") and Chubb Custom Insurance Co.'s ("Chubb") motions for partial summary

judgment, Docket Nos. 105 and 107, and John R. Richardson's motion for summary judgment,

Docket No. 108.  The parties seek a determination of whether Illinois, Kansas, or Mississippi law applies to coverage issues relating to insurance policies that National Union and Chubb (collectively referred to herein as "the Insurance Companies") issued to Petco Petroleum Corp. ("Petco").  The motions have been fully briefed.  Docket Nos. 106, 109-10, 116-19, 121-23.  The Court, after reviewing the motions, briefs of the parties, and relevant law, finds that Illinois law governs.

## I. FACTUAL AND PROCEDURAL HISTORY

Petco is an independent oil and natural gas producer that was incorporated in Indiana and that maintains its principal place of business at its corporate headquarters in Hinsdale, Illinois. Docket No. 26, at 2; Docket No. 105-2, at 4.  Petco is a holding company for at least six Illinois corporations that own, lease, or operate oil and gas wells: Ogden Corp., Bergman Oil & Gas, Inc., Bergman Petroleum Corp., Willowbrook Resources, Inc., Loudon Energy Corp., and J. D. Bergman Corporation.  Docket No. 105-3, at 1-6; Docket No. 106, at 2.  Petco's wells and facilities are located in various states:  Indiana, Illinois, Mississippi, Oklahoma, and Texas. Docket No. 105-2, at 4.

The majority of Petco's employees, oil and gas wells, and business operations are located in Illinois.  *Id.* at 4-7.  Of Petco's approximately 200 employees, about 150 of them are employed in Illinois.  *Id.* at 4.  Approximately 800 to 1000 of Petco's more than 1200 producing wells are located in Illinois.  *Id.* at 4-5.  Most of Petco's business functions such as payroll, accounting, purchasing, managing insurance matters, recordkeeping, and regulatory filings take place at its corporate office in Hinsdale, Illinois.  *Id.* at 6-7.

One of Petco's four regional offices is located in Quitman, Clarke County, Mississippi.

2

Docket No. 107-16, at 3.  Petco employs about seven people and operates about 50 to 60 wells in Mississippi.  Docket No. 105-2, at 4, 17.  However, most of the business functions relating to the Mississippi office, including the handling of insurance matters, occur at Petco's Illinois headquarters.  *Id.* at 7.

In 2008, Petco's chairman, Jay Bergman, whose office was located at Petco's Illinois headquarters, instructed Petco's insurance broker, IMA of Kansas, Inc., which is located in Wichita, Kansas, to obtain a commercial general liability insurance policy and a commercial excess and umbrella insurance policy for Petco, Ogden Corp., Bergman Oil & Gas, Inc., Bergman Petroleum Corp., Willowbrook Resources, Inc., Loudon Energy Corp., and J.D. Bergman Corporation.  *Id.* at 7, 10-12; Docket No. 1-1, at 13.  Under Bergman's direction, IMA negotiated with National Union, a corporation that was organized under the laws of Pennsylvania and that has a principal place of business in New York, to obtain Petco's commercial general liability insurance policy.  Docket No. 105-2, at 11-12.  The policy period was from May 29, 2008, to May 29, 2009.  Docket No. 1-1, at 4.  IMA also arranged for Petco to obtain an excess policy from Chubb, a corporation that was organized under the laws of Delaware.[1]  Docket No. 105-2, at 10-12.  The period of the Chubb policy was from June 3, 2008, to May 29, 2009.  Docket No. 26-1, at 7.

On September 17, 2008, John Richardson, a Mississippi resident, was injured while working as an employee of RK Services, LLC at an oil well facility operated by Petco in Clarke County, Mississippi.  He sued Petco in the United States District Court for the Southern District of Mississippi, Civil Action No. 4:11-CV-128-CWR-LRA ("the Underlying Action"), on August

---

[1] The parties have not directed the Court to any portion of the record which identifies Chubb's principal place of business.

8, 2011, asserting that Petco was liable for negligent and/or intentional acts that contributed to his injuries.  Docket No. 1-2.  Petco was served with the complaint on August 15, 2011, and Petco and Richardson began engaging in settlement talks as the litigation progressed.  Docket No. 1-3, at 2-3.  RK Services' workers' compensation insurance carrier, Commerce and Industry Insurance Company, intervened as a plaintiff in April 2012 to attempt to recover amounts paid for Richardson's compensation benefits and medical services.

Warren McBride, a Petco consultant, notified the Insurance Companies of Richardson's claims by a letter dated May 8, 2012, which was mailed from Petco's Illinois headquarters to AIG Insurance Companies in New York.  Docket No. 1-3, at 2-3.  By the time Petco notified the Insurance Companies of Richardson's suit, the suit had been pending for nine months, and the parties had already participated in a settlement conference.  The Insurance Companies denied Petco coverage, asserting that Petco had failed to notify them of Richardson's claim "as soon as practicable" as required by the notice provisions included in the policies.  *See* Docket No. 1-1, at 23; Docket No. 26-1, at 31.

On August 9, 2012, National Union filed the present declaratory judgment action against Petco and Richardson in the United States District Court for the Northern District of Illinois. National Union's Complaint requests a judgment that National Union had no duty to defend Petco in the Underlying Action or to indemnify Petco for any loss or damages arising from the Underlying Action because, National Union argues, Petco did not provide timely notice of Richardson's claim.  Docket No. 1.  The action was transferred to this Court on October 11, 2012, Docket No. 14, and Richardson filed his answer and counterclaim against National Union on October 15, 2012, Docket No. 17.  Along with its answer, Petco filed a counterclaim against

National Union and a third-party complaint against Chubb on October 25, 2012.  Docket No. 26.

Chubb answered and filed a cross-complaint against Richardson and a counterclaim against

Petco.  Docket No. 32.

On January 31, 2013, Petco, Richardson, and Commerce and Industry Insurance

Company executed a settlement agreement in the Underlying Action.  *See* Docket No. 103, at 2.

As part of the settlement, Petco assigned Richardson its rights to payment under its insurance

policies with National Union and Chubb, thereby purportedly authorizing Richardson to attempt

to collect the settlement amount directly from the Insurance Companies.[2]  *See id.*  The magistrate

judge approved the settlement agreement in April 2013, and the Underlying Action was

dismissed with prejudice.  *See id.* at 3.

After the Underlying Action was dismissed, each party submitted summary judgment

motions regarding whether the laws of Illinois, Kansas, or Mississippi apply to the notice issue

that is central to this declaratory judgment action.  Richardson also seeks a declaration that the

notice of claim that Petco provided to the Insurance Companies was reasonable and not

prejudicial to the Insurance Companies, as well as a declaration that the settlement agreement in

the Underlying Action is binding and enforceable against the Insurance Companies.  Docket No.

108, at 19.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(a).  A party seeking to avoid summary judgment must identify admissible evidence in

---

[2] The Court makes no determination regarding the validity of the assignment.

the record showing a fact dispute.  *Id.* at 56(c)(1).  In cases like this, where the relevant facts are

not in dispute and the critical questions turn purely on legal rights and relationships, summary

judgment is appropriately considered.  *Canal Ins. Co. v. Owens*, No. 4:10-CV-00009-CWR-

LRA, 2011 WL 4833045, at *2 (S.D. Miss. Oct. 12, 2011).  In ruling on a motion for summary

judgment, the Court views the evidence and draws reasonable inferences in the light most

favorable to the non-movant.  *Maddox v. Townsend & Sons, Inc.*, 639 F.3d 214, 216 (5th Cir.

2011).

### III. DISCUSSION

In a diversity action, the Court applies the choice of law rules of the forum state to

determine which state's substantive law applies.  *Hartford Underwriters Ins. Co. v. Found.*

*Health Servs., Inc.*, 524 F.3d 588, 593 (5th Cir. 2008).  Under the law of the forum state,

Mississippi, a choice of law analysis is necessary "only when there is a true conflict between the

laws of two states, each having an interest in the litigation."  *Zurich Am. Ins. Co. v. Goodwin*,

920 So. 2d 427, 432 (Miss. 2006).  In this case, the three states that the parties assert may have

interest in this litigation have conflicting law regarding a pertinent issue:  whether an insurer is

required to show prejudice to avoid providing insurance benefits based on the timing of a notice

of claim.

In Illinois, the insurer is not required to show prejudice to rely on a late notice defense,

while in Mississippi and Kansas, the insurer must demonstrate that it was prejudiced by the late

notice in order to avoid liability.  *Compare Country Mut. Ins. Co. v. Livorsi Marine, Inc.*, 856

N.E.2d 338, 346 (Ill. 2006) (stating that "the presence or absence of prejudice to the insurer is

one factor to consider when determining whether a policyholder has fulfilled any policy

condition requiring reasonable notice," but that if the insurer did not receive reasonable notice, "the policyholder may not recover under the policy, regardless of whether the lack of reasonable notice prejudiced the insurer"), *with Capital City Ins. Co. v. Ringgold Timber Co.*, 898 So. 2d 680, 682 (Miss. Ct. App. 2004) (stating that the insurer "must show prejudice in order to deny [the insured's] coverage" (citing *Harris v. Am. Motorist Ins. Co.*, 126 So. 2d 870 (Miss. 1961))), *and Atchison, Topeka & Santa Fe Ry. Co. v. Stonewall Ins. Co.*, 71 P.3d 1097, 1137-39 (Kan. 2003) (holding that district court correctly concluded that the timing of insured's notice did not bar coverage because the insurer was not prejudiced).  The Court must, therefore, undergo a choice of law analysis.

Mississippi courts take the following steps to determine what state's law applies to a particular issue: "(1) determine whether the laws at issue are substantive or procedural; (2) if substantive, classify the laws as either tort, property, or contract; and (3) look to the relevant section of the Restatement (Second) of Conflict of Laws." *Hartford*, 524 F.3d at 593.  In the present case, the law on the notice issue is substantive and of a contractual nature.  Thus, under Mississippi law, it is appropriate to apply a "center of gravity" analysis to determine "the law of the place which has the most significant relationship to the event and parties or which, because of the relationship or contact with the event and parties, has the greatest concern with the specific issues." *Id.* at 593-94 (citation omitted); *see also* Restatement (Second) of Conflict of Laws § 188(1) (1971).  This inquiry involves analysis of relevant sections of the Restatement (Second) of Conflict of Laws.  *Hartford*, 524 F.3d at 594 (quoting *Ingalls Shipbuilding v. Fed. Ins. Co.*, 410 F.3d 214, 230 (5th Cir. 2005)).  Mississippi courts have considered sections 193, 188, and 6 of the Restatement, sometimes in that order, to evaluate conflicts of law relating to insurance

policies.  *See, e.g.*, *Goodwin*, 920 So. 2d at 434-37.

       1.   Section 193

Section 193 of the Restatement, which relates to insurance policies other than life

insurance policies, states the following:

> The validity of a contract of fire, surety or casualty insurance and the rights
> created thereby are determined by the local law of the state which the parties
> understood was to be the principal location of the insured risk during the term of
> the policy, unless with respect to the particular issue, some other state has a more
> significant relationship under the principles stated in § 6 to the transaction and the
> parties, in which event the local law of the other state will be applied.

Restatement (Second) of Conflict of Laws § 193.

Comment b to § 193  provides that "[s]ituations . . . where the location of the risk has less

significance[] include . . . where the policy covers a group of risks that are scattered throughout

two or more states."  *Id.* cmt. b (quoted in *Ingalls*, 410 F.3d at 231).  Based on the language of §

193, the Fifth Circuit has held that "§ 193 is pertinent only if there is, in fact, a single state which

can be identified as the 'principal' location of the risks insured by a policy."  *Hartford*, 524 F.3d

at 594 (citation omitted).

Because Petco's policies with National Union and Chubb cover risks that are located in

Illinois, Indiana, Mississippi, Oklahoma, and Texas, § 193 does not resolve the choice of law

issue.  *See* Restatement (Second) of Conflict of Laws § 193 cmt. b; *Hartford*, 524 F.3d at 594-95

(concluding that § 193 did not compel application of a particular state's law when the insurance

policies covered risks located in seven states); *Employers Mut. Cas. Co. v. Lennox Int'l, Inc.*, 375

F. Supp. 2d 500, 503-08 (S.D. Miss. 2005) (concluding that § 193 did not apply where an

insurance policy covered risks located throughout the United States).   Under these

circumstances, § 188 governs the choice of law issue.[3]  *See Goodwin*, 920 So. 2d at 435.

2.   Section 188

"Restatement § 188 identifies a number of factors pertinent to the determination of which State's substantive law must be applied in contract cases: (a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicile, residence, nationality, place of incorporation, and place of business of the parties."  *Ingalls*, 410 F.3d at 230-31 (citing Restatement (Second) of Conflict of Laws § 188(2)).  The Mississippi Supreme Court does not apply the § 188 factors in a mathematical manner, but instead "balances them to find a practical application."  *Goodwin*, 920 So. 2d at 435 (citing *Boardman v. United Servs. Auto. Ass'n*, 470 So. 2d 1024, 1034 (Miss. 1985)).  "Importantly, these factors are to be applied to 'determine the law applicable to *an issue*' and the contacts 'are to be evaluated according to their relative importance with respect to th[at] particular issue.'"  *Hartford*, 524 F.3d at 595 (quoting Restatement (Second) of Conflict of Laws § 188 (emphasis added)).  Hence, the § 188 factors should be analyzed while keeping in mind the pertinent issue—whether National Union and Chubb must show that they were prejudiced as a result of being notified of Richardson's claims against Petco almost nine months after Richardson's suit was filed.

a.   Place of Contracting

"As used in the Restatement . . . , the place of contracting is the place where occurred the last act necessary, under the forum's rules of offer and acceptance, to give the contract binding

---

[3] Richardson asserts that § Section 206 of the Restatement should be applied.  Docket No. 109, at 6-7. Section 206 provides that "[i]ssues relating to details of performance of a contract are determined by the local law of the place of performance."  Restatement (Second) of Conflict of Laws § 206.  Richardson has not cited to any Mississippi case that has applied § 206, and thus, this Court declines to do so.

effect . . . ."  Restatement (Second) of Conflict of Laws § 188 cmt. e.  Mississippi law provides that "a contract is made when and where it is accepted by the offeree."  *Ryan v. Glenn*, 52 F.R.D. 185, 192 (N.D. Miss. 1971) (citing *Couret v. Conner*, 79 So. 230 (Miss. 1918)); *see also Edwards v. Wurster Oil Co., Inc.*, 688 So. 2d 772, 775 (Miss. 1997) ("A contract is not formed until an offeree accepts.").

Neither party  points to evidence that clearly identifies the act of acceptance that consummated each of the insurance policies.  Without citing to any supporting evidence, National Union asserts that Petco's Illinois headquarters is the place of contracting because, according to National Union, that is where the policy was ultimately delivered to Petco.  Docket No. 122, at 4-5.  Similar to National Union, Chubb argues that Petco's acceptance of the Chubb Policy at Petco's Illinois headquarters was the last act necessary to give the contract effect, although it does not cite to supporting evidence.  Docket No. 110, at 7-8.

In opposition to National Union's and Chubb's arguments, Richardson argues that both the National Union and Chubb policies were mailed to IMA in Kansas.  Docket No. 116, at 2-7.  While Richardson's memorandum of law includes images of the cover letters allegedly sent to IMA from Chubb and National Union that suggest that the policies were mailed to IMA, there is no indication that IMA's receipt of the insurance policies constitutes Petco's acceptance of the policies.  Thus, the record does not clearly show whether the last acts that made the insurance policies binding occurred in Kansas or Illinois.[4]  However, neither party argues, nor does the

---

[4] National Union points out that the National Union policy's inclusion of endorsements entitled "Illinois Changes—Cancellation and Renewal,"  Docket No. 1-1, at 29, suggests that Petco and National Union recognized Illinois as the place of contracting.  Although the Court finds this fact persuasive on the issue of whether Petco and National Union intended for Illinois law to govern at least some of the terms of their contract, the Court finds that there is a dispute of fact regarding where the contract was made.

record suggest, that Mississippi was one of the states where the Chubb and National Union insurance policies were consummated.  This factor, therefore, points in favor of applying either Kansas or Illinois law.

      b.   Place of Negotiation of Contract

While the state where parties negotiate and agree on the terms of their contract typically has an "interest in the conduct of the negotiations and in the agreement reached," the place of negotiation is less important "when there is no one single place of negotiation and agreement, as, for example, when the parties do not meet but rather conduct their negotiations from separate states by mail or telephone."  Restatement (Second) of Conflict of Laws § 188 cmt. e.  In the present case, Petco's chairman, Jay Bergman, communicated Petco's insurance needs from his office at Petco's Illinois headquarters to a Kansas insurance broker, IMA.  Docket No. 105-2, at 10-12.  Although IMA did not have the authority to obtain an insurance policy without Petco's consent, under Bergman's direction, IMA negotiated the terms of Petco's insurance with National Union.  *Id.* at 12.

Similarly, Petco obtained the Chubb policy through IMA, with Bergman providing instructions to IMA.  *Id.* at 11-13.  IMA negotiated the terms of the Chubb policy with a Texas-based broker, Energy Risk Associates, Inc.  Docket No. 46-8, at 3; Docket No. 107-5, at 2.

Because the insurance policies were negotiated in several states, this factor is of little importance to the determination of which state's law applies.  However, it is notable that Mississippi is not included as one of the states in which negotiations took place.

      c.   Place of Performance

The place of performance is the "state where performance is to occur under a contract . . .

."  Restatement (Second) of Conflict of Laws § 188 cmt. e.  In *Goodwin*, the Mississippi Supreme Court determined the place of performance of an automobile insurance policy by considering where the relevant activities between the parties took place, including where the parties conducted business with each other, where payments of premiums were made, and where action taken on the insurance contract would likely be settled between the parties.  920 So. 2d at 436.

In the present case, although Richardson argues that the place of performance is the place of the Underlying Action because that is where the insurers' duty to defend would be exercised, Docket No. 109, at 10, *Goodwin* suggests that the more relevant inquiry is where the relevant activities between Petco and the Insurance Companies, the contracting parties, took place.  Petco pays its insurance premiums from its Illinois headquarters, and if policy benefits were to be paid, they would be paid to Petco's headquarters.  Docket No. 106, at 9; Docket No. 105-2, at 7, 11, 15-16.  Furthermore, pertinent to the particular issue at hand—the effect of the timing of Petco's notice to the Insurance Companies regarding Richardson's suit—there is no indication that the parties expected Petco to notify the insurers of claims under the policy from Mississippi rather than from its Illinois headquarters.  *See* Docket No. 105-2, at 11 (McBride testifying that currently, someone from Petco's corporate office is responsible for reporting claims to Petco's insurers, although providing no testimony regarding who had that responsibility in 2008).  Ultimately, Petco did, in fact, notify the Insurance Companies of Richardson's suit from its Hinsdale, Illinois, headquarters via a letter dated May 8, 2012.  *See* Docket No. 1-3, at 2-3.  These facts weigh in favor of applying Illinois law.

> d.    Location of Subject Matter

Some courts have considered the "location of the subject matter" to be analogous to §

193's "principal location of the insured risk."  *Hartford*, 524 F.3d at 597.  If that approach were

applied here, the location of the subject matter would not be informative on the choice of law

issue because the insured risks are located in multiple states.  *See id.*

In *Goodwin*, however, the Mississippi Supreme Court determined that the subject matter

of a contract was where the bulk of the insured's equipment, capital, and manpower were

located, even though the court found that § 193 did not apply because the insured risks, a fleet of

trucks, were "scattered and constantly on the move."  920 So. 2d at 435-36.  Here, the

overwhelming majority of Petco's employees, wells, and business operations are located in

Illinois.  Docket No. 105-2, at 4-7.  Of Petco's approximately 200 employees, about 150 of them

are employed in Illinois, and only about seven of them are employed in Mississippi.  *Id.* at 4, 17.

Additionally, although Petco operates about 60 wells in Mississippi, it operates 1000 or more

wells in Illinois.  *Id.* at 5, 17.  All of Petco's corporate functions such as accounting, purchasing,

insurance, recordkeeping, and regulatory filings take place in Hinsdale, Illinois.  *Id.* at 6-7.

Notably, Petco has no facilities or employees in Kansas.  Therefore, "it stands to reason that the

location of the subject matter of the contract[s]" is in Illinois rather than Kansas or Mississippi.

*Goodwin*, 920 So. 2d at 436.

> e.    Domicile, Residence, Nationality, Place of Incorporation, and Place of Business
>       of the Parties

This factor refers to the domicile, residence, nationality, place of incorporation, and place

of business of the parties to the contract.  *See id.* ("Subsection e speaks in terms of the parties to

the contract, not those who may become unintended beneficiaries.").  Therefore, because

Richardson was not a party to the insurance contract between Petco and National Union, or the contract between Petco and Chubb, his domicile and residence is irrelevant.

A comment to § 188 also notes that "with respect to most issues, a corporation's principal place of business is a more important contact than the place of incorporation . . . ."  Restatement (Second) of Conflict of Laws § 188 cmt. e.  Thus, although Petco was incorporated in Indiana, the more important contact for purposes of choice of law is Petco's principal place of business at its headquarters in Hinsdale, Illinois.  Docket No. 105-2, at 4.

With regard to the Insurance Companies, National Union is a corporation organized under the laws of Pennsylvania with a principal place of business in New York.  The record indicates that Chubb is a corporation organized under the laws of Delaware, but it does not include information regarding Chubb's principal place of business.  Regardless, Petco's principal place of business assumes greater importance than Chubb's or National Union's since Illinois is also the place of performance of the contract.  *See* Restatement (Second) of Conflict of Laws § 188 cmt. e ("The fact that one of the parties is domiciled or does business in a particular state assumes greater importance when combined with other contacts, such as that this state is the place of . . . performance . . . .").

Because Petco has a principal place of business in Illinois, this factor suggests that Illinois law applies.

f.    § 188 Conclusion

None of the § 188 factors suggest that Mississippi law is applicable to the notice issue that is before the Court.  Further, the fact that Petco's insurance broker, IMA, is located in Kansas is insufficient to suggest that Kansas's law applies when the insured, Petco, and Petco's

14

decision-makers regarding insurance matters were located in Illinois.  On the other hand, at least

three of the five § 188 factors weigh in favor of applying Illinois law, and none of the factors

weigh against applying Illinois law.  Hence, Illinois is the "center of gravity" of the insurance

transaction between Petco and National Union, and the insurance transaction between Petco and

Chubb.  The § 188 factors, therefore, create the presumption that Illinois law applies to the notice

issue.

        3.   Section 6

Under Mississippi law, the presumption created by § 188 "can be rebutted by weighing

the relative interests of the forum and other interested states under section 6."  *Goodwin*, 920 So.

2d at 436.  Section 6 of the Restatement states the following:

> (1) A court, subject to constitutional restrictions, will follow a statutory directive
> of its own state on choice of law.
>
> (2) When there is no such directive, the factors relevant to the choice of the
> applicable rule of law include
>
>     (a) the needs of the interstate and international systems,
>
>     (b) the relevant policies of the forum,
>
>     (c) the relevant policies of other interested states and the relative interests of
> those states in the determination of the particular issue,
>
>     (d) the protection of justified expectations,
>
>     (e) the basic policies underlying the particular field of law,
>
>     (f) certainty, predictability and uniformity of result, and
>
>     (g) ease in the determination and application of the law to be applied.

Restatement (Second) of Conflict of Laws § 6(1)-(2).  None of these factors rebut the

presumption that Illinois law applies.

Richardson argues that the application of Illinois law to the notice issue would offend

Mississippi's public policy.  However, the Mississippi Supreme Court has recognized that "the laws of other states sometimes conflict with Mississippi law," and that such a conflict "does not itself mean that the foreign law is so offensive that it must be set aside."  *Goodwin*, 920 So. 2d at 437 (citation omitted).  In fact, the Mississippi Supreme Court has previously interpreted the notice provisions of an automobile liability policy according to another state's law, even though that state's law construed the notice provision more strictly than Mississippi law.  *See Sw. Fire & Cas. Co. v. Kovar*, 86 So. 2d 356, 357, 391-94 (Miss. 1956) (concluding that it would deprive the insurer of due process to "enlarge the [insurer's] obligations under the contract by applying the law of Mississippi to the terms of a contract made in Texas by Texas parties").  Thus, Richardson's assertion that applying Illinois law would be contrary to the public policy of Mississippi is without merit.[5]

Richardson also argues that Mississippi has a significant interest in the outcome of this dispute because of the following:  (1) Petco has a Mississippi office and does business in Mississippi; (2) Richardson, the plaintiff in the Underlying Action, is a Mississippi resident; (3) Mississippi is where the alleged tortious conduct occurred leading to Richardson's injuries; and (4) "the outcome of the notice issue will have a significant impact on whether insurance is available to compensate Richardson and reimburse his workers' compensation lien . . . ."  Docket No. 109, at 12.  However, these facts do not suggest that Mississippi's interest in the notice issue is more significant than Illinois' interest.

"[T]he fact that a cause of action arose in Mississippi and that Mississippians are

_____

[5] In support of his policy argument, Richardson merely notes that the National Union insurance contract includes an automobile policy for "the 'pumper truck' which was utilized by Petco in the course of the repair which le[d] to Mr. Richardson's injuries . . . ."  Docket No. 109, at 11.  However, the Court is unaware of any allegation from Petco or Richardson that the automobile policy provides coverage for Richardson's injuries.

16

involved does not in itself generate an interest in Mississippi that is superior to that of another state." *Goodwin*, 920 So. 2d at 436 (citations omitted).  For example, in *Goodwin*, where the choice of law issue affected the recovery that a Mississippi automobile accident victim would receive from an Iowa insured under an Iowa insurance contract, the Mississippi Supreme Court determined that "[t]he interest of Iowa in the regulation of its businesses and contracts is superior to that of Mississippi even if it means that Mississippians receive less compensation for their injuries." *Id.* (citation omitted).  The court also reasoned that "[t]he occurrence of the accident in Mississippi and injury to Mississippians is fortuitous because they arise from an incident which is not specifically relevant to the true dispute." *Id.* at 437.

Similarly, Illinois' interest in regulating Petco and its contracts is greater than Mississippi's because Petco maintains its headquarters in Illinois and has significant operations in Illinois.  This is true even though Petco attempted to assign its rights under the National Union and Chubb policies to Richardson, a Mississippi resident.  As an assignee, Richardson would have no greater rights than Petco would if it chose to pursue claims against National Union or Chubb. *See Great S. Nat'l Bank v. McCullough Envtl. Servs., Inc.*, 595 So. 2d 1282, 1287 (Miss. 1992) ("Assigned contractual rights may be enforced by the assignee-who essentially stands in the shoes of the assignor and who takes no rights other than those which the assignor had possessed."  (quotation marks and citations omitted)).

Furthermore, the possibility that Richardson may receive less compensation, or no compensation, for the injuries he received from his accident does not diminish Illinois' interest in the interpretation of Petco's insurance contracts. *See Goodwin*, 920 So. 2d at 436.  Richardson's accident and his resulting injuries are not specifically relevant to the contractual dispute about

17

whether the Insurance Companies must demonstrate that they were prejudiced by the timing of the notice of claim that Petco provided the Insurance Companies.  The application of Illinois law to the interpretation of the insurance policies' notice provisions has no bearing on Richardson's ability to sue Petco to seek compensation for the injuries he received from his accident. Although Mississippi has an interest in Richardson's underlying tort claims, Illinois has the greatest interest in the interpretation of Petco's insurance policies given Petco's strong presence in Illinois.

The "certainty" factor also weighs in favor of applying Illinois law.  If the law of the state where a claim happens to arise applies to the notice issue, the effect of the timing of a notice of claim would potentially vary from claim to claim.  It is unlikely that Petco and the Insurance Companies intended such a result.

Because none of the § 6 factors rebut the presumption that Illinois law applies to the notice issue, Illinois law shall govern the issue.

### IV. CONCLUSION

For the foregoing reasons, National Union's and Chubb's motions for partial summary judgment are granted, and Illinois law shall apply to the notice issue.  Richardson's motion for summary judgment is, therefore, denied with prejudice as to the choice of law issue, and denied without prejudice as to all other issues.

**SO ORDERED**, this the 4th day of November, 2013.

s/ Carlton W. Reeves
UNITED STATES DISTRICT JUDGE